**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

ELIZABETH C. STRAUB,               )
                                   )
      Plaintiff,              )
                                   )
v.                                 )        CIVIL ACTION NO. 5:04-0536
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
      Defendant.              )

**PROPOSED FINDINGS AND RECOMMENDATION**

      This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433,

1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate

Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and

Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before

the Court are the parties' Cross-Motions for Judgment on the Pleadings.

      The Plaintiff, Elizabeth C. Straub, (hereinafter referred to as "Claimant"), filed applications

for SSI and DIB on February 1, 2002 (protective filing date), alleging disability as of March 4, 2001,

due to pain in the neck, shoulder, arm, and hands; thyroid; blindness in the right eye; hypertension;

headaches; diabetes; poor vision in the left eye; depression; and anxiety. (Tr. at 65-68, 46, 53.) The

claims were denied initially and upon reconsideration. (Tr. at 46-48, 53-55.) On September 9, 2003,

Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 56.) The hearing

was held on December 16, 2003 before the Honorable John T. Yeary. (Tr. at 307-52.) By decision

dated February 23, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-

20.)  The ALJ's decision became the final decision of the Commissioner on March 29, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 4-6.) Claimant filed the present action seeking judicial review of the administrative decision on June 1, 2004 pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

2

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.)  Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of right eye blindness, diabetes, and disc disorder. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 16.)  The ALJ then found that Claimant had a residual functional capacity for light work with additional limitations. (Tr. at 17.) The ALJ found that Claimant had moderate limitations (defined as moderate but still able to function) in pushing/pulling, reaching in all directions, gross manipulation, fine manipulation, and feeling with the right dominant hand/arm. (Tr. at 17.) She should avoid concentrated exposure to extreme cold, vibration, and hazards, and experienced mild to moderate pain but could be attentive to and carry out the assigned work tasks. (Tr. at 17.)  As a result, Claimant was unable to return to her past relevant work.  (Tr. at 17.) Nevertheless, the ALJ found that she could perform such jobs as dressing room attendant, shirt folding machine operator, and label remover, which existed in significant numbers in the national economy. (Tr. at 18.) On this basis, benefits were denied.  (Tr. at 19-20.)

3

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 30, 1949, and was 53 years old at the time of the administrative hearing.  (Tr. at 66.)  Claimant has a tenth grade education. (Tr. at 117.)  In the past, she worked as a home health care provider. (Tr. at 122.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

4

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in failing to give controlling weight to the opinion of Claimant's treating physician, Dr. McKelvey; and (2) the ALJ failed to properly develop the record with regard to Claimant's mental impairments.  The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. <u>Treating Physician's Opinion</u>

Claimant argues that the ALJ erred in failing to give "great weight" to the opinion of Dr. Mary McKelvey, Claimant's treating physician.  The Commissioner asserts that this argument is without merit.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  <u>See</u> 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (2004).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (2004).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (2004).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th

Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527; 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2); 416.927(d)(2).

Under sections 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under sections 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4) and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

6

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to [this] subpart . . . , your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e); 416.927 (e)(2) (2004). The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." Id. §§ 404.1527(e)(3), 416.927(e)(3). The regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1546; 416.946 (2004.)   However, the adjudicator must still apply the applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Security Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "medical source statement," which is a "'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR

96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. §§ 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

In May 2001, Claimant's chiropractor, who treated her neck pain, opined that she could return to work at limited duty, which her employer had refused. (Tr. at 264.) He noted that her condition was improving and that a return to work was anticipated in 4-6 weeks. (Tr. at 264.) In July 2001, Claimant underwent a functional capacity evaluation, which revealed that she had the ability to perform light work activity. (Tr. at 149.) Her test findings suggested "at least some degree of symptom magnification." (Tr. at 149.) In September 2002, a physical therapist opined that Claimant was capable of handling light activities of daily living. (Tr. at 185.) Claimant's physical therapy treatment notes indicate that she was 100 percent functional with light to moderate activities of daily living. (Tr. at 186-94.)

Claimant was examined by other physicians during the relevant time period. Dr. Forberg, orthopedic surgeon, conducted an independent medical examination of Claimant in September 2001 and opined that she had acute cervical spine strain and right shoulder strain with osteoarthrosis of the cervical spine. (Tr. at 164.) Dr. Forberg opined that Claimant could return to a modified or transitional work assignment "provided she did not have to sit for prolonged periods of time, work at or above shoulder level on the right or [be] involved in an activity that requires rotation to left and

right as well as chronic flexion of the cervical spine." (Tr. at 164-65.) Dr. Orphanos evaluated Claimant in January 2002. (Tr. at 168-72.) Dr. Orphanos concluded that Claimant sustained musculoligamentous type of injury involving the cervical spine with no evidence of radiculopathy or neurological abnormalities. (Tr. at 170.) State agency physicians who reviewed the record in October 2002 and May 2003 opined that Claimant was capable of performing light work. (Tr. at 199-206, 285-92.) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and requires a good deal of walking or standing. See 20 C.F.R. §§ 404.1567(b); 416.967(b) (2004).

Dr. Gobunsuy examined Claimant in November 2002. (Tr. at 208-11.) Claimant was able to walk on her heels, toes, and do heel-to-toe tandem. (Tr. at 210.) She could not squat, but could stand on one leg at a time. (Tr. at 210.) She was able to write her name and pick up a coin without difficulty. (Tr. at 210.) Her cervical spine was tender, as was the lumbar spine and the right shoulder, elbow and wrist. (Tr. at 210-11.) Dr. Gobunsuy noted that Claimant's diabetes was out of control and opined that she had cervical disc disease and possibly arthritis of the cervical spine. (Tr. at 211.) Although Claimant complained of pain in the shoulders, elbows, and wrists, there was "nothing objective on the examination of these joints." (Tr. at 211.) Dr. Gobunsuy noted that Claimant may have degenerative arthritis of her spine, "considering her age," but her straight leg raising test was satisfactory. (Tr. at 211.)

The ALJ summarized the evidence of record in his opinion, including Claimant's treatment with Dr. McKelvey at New River Health Association. (Tr. at 13-17.) On November 5, 2003, Dr. McKelvey completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) regarding Claimant. (Tr. at 294-97.) Dr. McKelvey's assessment was very restrictive, opining that Claimant could lift less than 10 pounds and do no frequent lifting of any amount; could only stand

one hour in an eight-hour workday, 30 minutes without interruption; could only sit for less than one hour in an eight-hour day, 15 minutes without interruption; could never perform postural activities; was limited in reaching, handling, feeling, pushing/pulling, and seeing; and had every environmental restriction listed. (Tr. at 294-97.) The ALJ gave this opinion no weight because "the limitations are not supported by the physician's own findings or any other physician's findings in the record." (Tr. at 17.)

As the Commissioner notes, Dr. McKelvey treated Claimant only four times before filling out her medical source statement. (Tr. at 298-302.) In July 2003, Dr. McKelvey noted that Claimant was injured while working as a home health aide after lifting a 400 pound patient. (Tr. at 302.) Dr. McKelvey noted Claimant's problems as hypertension, hypothyroidism, chronic back pain, depression, and anxiety. (Tr. at 302.) In August 2003, Dr. McKelvey noted that Claimant was having back pain and that although her blood sugar had been out of control, Claimant was not taking her diabetes medication properly. (Tr. at 301.) Claimant's hypertension was under fair control. (Tr. at 301.) In October, Claimant was having problems with depression and anger and had some muscle tension consistent with a diagnosis of fibromyalgia. (Tr. at 300.) Claimant returned to Dr. McKelvey in November 2003 for follow-up on her thyroid. (Tr. at 298.) Her thyroid function tests were "acceptable." (Tr. at 298.) Dr. McKelvey noted that Claimant needed to watch her diet, as her glucose was still "a little high." (Tr. at 298.) Her cholesterol was better, and the doctor noted musculoskeletal changes consistent with fibromyalgia. (Tr. at 298.) Claimant was to return in one month, sooner if her condition worsened. (Tr. at 298.) Claimant was treated with medication management during this time period. (Tr. at 298-302.)

The ALJ reviewed all of this evidence in his decision and used it to determine that Dr. McKelvey's medical source statement was entitled to no weight. (Tr. at 13-17.) The ALJ further

10

noted Claimant's testimony that she did not follow her diabetic diet and that her primary treatment was from a chiropractor. (Tr. at 15, 319, 321.) The ALJ found that Claimant's daily activities, which included driving, running errands, helping with her grandchildren, washing dishes, doing laundry, walking, and visiting, were consistent with the ability to perform light work. (Tr. at 17, 314-15, 327-32.) As the Commissioner notes, no other physician in the record opined that Claimant had similar limitations to the severe limitations outlined by Dr. McKelvey. The evidence of record indicates several opinions that Claimant was functional at a light activity level and that she should be able to return to work. State agency physicians opined that Claimant could perform the physical demands of light work. (Tr. at 199-206, 285-92.) Additionally, Dr. McKelvey based several of Claimant's limitations on carpal tunnel syndrome and diabetic nerve damage, yet she did not diagnose these conditions. (Tr. at 295-96.) Dr. Gobunsuy opined that Claimant had no diabetic neuropathy. (Tr. at 211.)

The Court finds that the ALJ sufficiently considered and weighed the evidence of record in determining that Dr. McKelvey's opinion was entitled to no weight. By summarizing the medical evidence of record and Claimant's treatment history, he considered the relevant factors in making the determination. Accordingly, Claimant's argument is without merit, and the ALJ's decision to give Dr. McKelvey's report no weight is supported by substantial evidence.

2. Development of the Record

Claimant next argues that the ALJ failed to properly develop the record regarding Claimant's mental impairments. The Commissioner asserts that this argument is without merit.

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that

"[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id.  The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a); 416.912(a) (2004).  Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. §§ 404.1512(c); 416.912(c).  In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion."  Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

12

As the Commissioner notes, Claimant fails to point to any evidence that the ALJ did not obtain. The ALJ reviewed mental health treatment evidence from New River Health Association. (Tr. at 15.) Mental status examinations in November 2002 and January 2003 showed that Claimant was alert, oriented, and had an appropriate affect. (Tr. at 224, 220.) Claimant was referred to a mental health professional in July 2003 after she reported being upset over her sister's death from cancer. (Tr. at 303.) Claimant was taking Paxil but stated that she felt suicidal. (Tr. at 303.) Claimant saw Gail Kinsey, M.A. in November 2003. (Tr. at 305.) Ms. Kinsey stated that Claimant's mental status was normal but she displayed anxious and depressed mood, and recommended counseling for two weeks to improve stress management. (Tr. at 306.) Claimant returned after 10 days but did not keep further appointments. (Tr. at 304.) A state agency physician opined in May 2003 that Claimant did not have a severe mental impairment. (Tr. at 270.)

The ALJ properly evaluated Claimant's mental impairment utilizing the special technique described in the Regulations. See 20 C.F.R. §§ 404.1520a(a); 416.920a(a). He determined that Claimant had mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, citing evidence in support of each finding. (Tr. at 15.) He also noted the fact that Claimant failed to keep her mental health appointment. (Tr. at 15.)

As noted, Claimant points to no evidence that the ALJ failed to consider, nor does she indicate what the ALJ could have done to add to the record. The regulations state that the ALJ has discretion in deciding whether to order a consultative examination. 20 C.F.R. §§ 404.1519a; 416.919a (2004). The regulations further provide that a consultative examination is required when the evidence as a whole is insufficient to support a decision. See id. The mental health evidence in

13

this case appears sufficient to support the ALJ's determination. Accordingly, Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

14

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: May 31, 2005.

R. Clarke VanDervort
United States Magistrate Judge